UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FEDERAL DEPOSIT INSURANCE
CORPORATION as receiver for CITIZENS        Case No. 10-11057
STATE BANK,
    Plaintiff,                                 Honorable Patrick J. Duggan

v.

A. LEWIS KATZOWITZ and JOSEPH P.
ZADA,
    Defendants.
_____/

**OPINION AND ORDER**
At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on February 3, 2012.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                  U.S. DISTRICT COURT JUDGE

In this action, the Federal Deposit Insurance Corporation ("FDIC"), as receiver for Citizens State Bank ("Citizens"), seeks to collect a debt allegedly owed by Dr. Abraham Katzowitz. Presently before the Court are cross-motions for summary judgment filed by the FDIC and Katzowitz pursuant to Federal Rule of Civil Procedure 56. This matter has been fully briefed, and the Court heard oral argument on December 19, 2011. For the reasons stated below, the Court denies both motions.

**I. Factual and Procedural Background**

The loan at issue is one of several related transactions involving Defendant Joseph Zada. Zada had previously obtained a number of loans through Community Central Bank, a bank located in Mount Clemens, Michigan. Loan officers Christopher Olzem and Douglas Dunkelberg assisted Zada in these transactions. When Olzem and Dunkelberg

left Community Central Bank and moved to Citizens, Zada began borrowing from Citizens. Katzowitz asserts that during 2004, Zada reached a statutory lending limit of $3.5 million and could not borrow additional funds through Citizens.[1] Katzowitz claims that to circumvent this limit, Olzem and Dunkelberg colluded with Zada to allow him to obtain loans from Citizens through third parties. Zada introduced Olzem and Dunkelberg to three wealthy individuals who participated in the loan transactions: Walter Zaremba, Sergei Fedorov, and Katzowitz. Zaremba borrowed $1.85 million from Citizens, while Fedorov and Katzowitz each borrowed $2.25 million. The proceeds of each loan were advanced to Zada. The loan to Katzowitz is the subject of this action.[2]

The Katzowitz loan closed on June 29, 2004. On this date, Katzowitz executed a promissory note in favor of Citizens in the amount of $2.25 million. Citizens designated this Loan Number 20302. The six-month loan required five monthly interest payments, with a final principal and interest payment of $2,264,062.50 due on December 29, 2004. Katzowitz has admitted that he signed this promissory note. Katzowitz Dep. 25:18-26:4, Oct. 22, 2008.

As security for this loan, Katzowitz granted Citizens a mortgage on a home and two vacant lots located in Clinton Township, Michigan. Katzowitz and Zada also signed a "Commercial Security Agreement" granting Citizens a security interest in a horse, an

---

[1] The FDIC disputes this, pointing to subsequent loans Citizens made to Zada on October 28, 2005 and February 27, 2006, totaling over $1.3 million.

[2] The Fedorov loan is the subject of a separate lawsuit pending in the Eastern District of Michigan. The Court is unaware of any litigation pertaining to the Zaremba loan.

assignment of a $950,000 insurance policy on the horse, and an assignment of "precious jewelry."[3] Zada, who apparently owned the jewelry and the horse, was designated the "Grantor" of the security interest, while Katzowitz was the "Borrower."

Katzowitz signed a "Disbursement Request and Authorization" stating that the loan proceeds of $2.25 million should be disbursed via "wire transfer." FDIC Br. Supp. Mot. Summ. J. Ex. D at 1. This document does not specify the account into which the funds are to be transferred. Citizens deposited the loan proceeds into an account held by Zada.

Zada began making the monthly payments, and Citizens forwarded communications to him pertaining to this loan, although it appears that some correspondence was also sent to Katzowitz. Klieman Dep. 87:12-24, Mar. 18, 2011. It is unclear whether Katzowitz may have directed Citizens to forward loan-related correspondence to Zada. Klieman Dep. 86:15-87:2. At any rate, Zada failed to make all of the scheduled payments, and Citizens granted a series of short-term extensions to the loan. Katzowitz denies signing any modification agreements, and claims that he was unaware of the loan's delinquency.

As of early 2005, the loan still had not been repaid. Citizens rarely allowed interest-only loans on a long-term basis, and wished to "term out" the loan by refinancing the interest-only loan with a traditional loan that required principal and interest payments over a fixed time period. Loan Committee meeting minutes and Board meeting minutes reflect that the proposed loan modification would "term out" Loan Number 20302.

On March 30, 2005, several loan documents were executed to accomplish the "term

---

[3] The same jewelry also secured Citizens' other outstanding loans to Zada.

3

out" of Katzowitz's 2004 loan. *See* Katzowitz Br. Supp. Mot. Summ. J. Ex. H. Katzowitz claims that his signatures on these documents were forged.[4] The documents related to this loan include a promissory note, a Disbursement Request and Authorization, a Commercial Security Agreement, and a Business Entity Affidavit. Citizens referred to the loan as Loan Number 21403. The note calls for 60 monthly payments of principal and interest. In the Security Agreement, Katzowitz is the "Grantor" of the security interest, while Zada is not a party, even though the agreement purports to grant an interest the same collateral as the previous Security Agreement. The Disbursement Request and Authorization provides the following disbursement instructions:

> Amount paid on Borrower's account: $2,174,977.40
> $2,174,977.40 Payment on Loan # 20302

*Id.* at 3. The documents stated that the purpose of the loan was to "term out existing note used for working capital and investment purposes." *Id.* In Citizens' records, Loan Number 20302 was designated "paid off" effective March 30, 2005. Katzowitz Br. Supp. Mot. Summ. J. Ex. W. The original promissory note was marked "paid" and delivered to Zada. Klieman Aff. ¶ 7. Zada began making the payments to Citizens on the 2005 loan, but at some point, he failed to make the scheduled payments.

In January 2007, Citizens hired Edward Klieman as Senior Vice President and Senior Loan Officer. Klieman was told that his top priority was to collect on the loans to Zada

---

[4] The FDIC has not stipulated to the fact that Katzowitz's signature was forged, although Citizens' internal investigation appears to have concluded that this was the case. It is not clear who may have forged the signatures; the parties speculate that Olzem, Dunkelberg, Zada, or even Zada's assistant may have done so.

4

and the individuals Zada was involved with, including Katzowitz, Zaremba, and Fedorov. At that time, these outstanding loans totaled more than $8 million. Klieman Dep. 18:5-19:6. Klieman investigated the matter and discovered a number of irregularities that he believed violated typical commercial lending practices. Klieman also raised questions concerning the collateral securing these loans, citing the lack of an independent appraisal for the jewelry and his extensive (but unsuccessful) efforts to locate the horse.

By the time Klieman conducted his investigation, Olzem and Dunkelberg had left Citizens. Olzem had obtained a position as a loan officer at another bank, and in April 2007, Zada sought a loan from that bank to pay off his Citizens loans. Zada wished to obtain the jewelry securing his Citizens loans and use it to secure the new loan. He negotiated a forbearance agreement with Citizens providing for the release of the jewelry upon payment of $1 million. As part of this forbearance agreement, three additional horses were pledged as collateral to secure Katzowitz's loan. Zada subsequently made the $1 million payment, and the jewelry was released to him. This payment was applied to Zada's loans.

On July 14, 2008, Citizens filed this action in Macomb County Circuit Court against Katzowitz and Zada, seeking to collect on the 2005 loan, which was the later of the two loan transactions. The Complaint asserts the following claims: foreclosure of mortgage (Count I); breach of promissory note (Count II); breach of security agreement (Count III); claim and delivery (Count IV); and fraudulent misrepresentation (Count V). Sometime during the summer of 2008, however, Klieman discovered the allegedly forged signatures on the 2005 loan documents and informed his superiors of this. Citizens amended its

Complaint, seeking to recover on the 2004 loan instead.

On December 18, 2009, Citizens was closed by The Michigan Office of Financial and Insurance Regulation. The FDIC was named receiver and was later substituted for Citizens in this suit as the real party in interest. The FDIC removed the suit to this Court pursuant to 12 U.S.C. § 1819(b)(2)(B). A consent judgment entered on December 13, 2011 resolved the FDIC's claims against Zada. Katzowitz and the FDIC have now filed motions for summary judgment.

## II. Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323, 106 S. Ct. at 2553. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). To demonstrate a genuine issue, the non-movant must present

sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512. The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *Id.* at 255, 106 S. Ct. at 2513. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

### III. Katzowitz's Motion for Summary Judgment

**A. Lack of Consideration**

Katzowitz argues that the promissory note is unenforceable for lack of consideration because Citizens deposited the loan proceeds into Zada's account. "That the consideration for a promise may inure to one other than the promisor . . . is a well-established principle of contract law." *Highland Park v. Grant-Mackenzie Co.*, 366 Mich. 430, 446-47, 115 N.W.2d 270, 278 (Mich. 1962). Stated differently, "'[t]he benefit rendered need not be to the party contracting, but may be to anyone else at his procurement or request.'" *Id.* at 447, 115 N.W.2d at 278 (quoting *Sanford v. Huxford*, 32 Mich. 313, 315 (Mich. 1875)). Katzowitz specifically authorized distribution of the funds via wire transfer. Although the loan documents do not identify Zada's account as the proper destination for the funds, they also do not identify Katzowitz's account. The loan documents are ambiguous with respect to this term, but ambiguity does not necessarily preclude enforcement of a contract. *See City of Grosse Pointe Park v. Mich. Mun. Liab. & Prop. Pool*, 473 Mich. 188, 201, 702

7

N.W.2d 106, 114-15 (Mich. 2005). When interpreting contract terms, a court's primary responsibility "is to ascertain and enforce the intent of the parties." *Fed. Ins. Co. v. Hartford Steam Boiler Inspection & Ins. Co.*, 415 F.3d 487, 495 (6th Cir. 2005). Courts must give due regard "to the purpose sought to be accomplished by the parties as indicated by the language used, read in the light of the attendant facts and circumstances." *City of Grosse Pointe Park*, 473 Mich. at 200-01, 702 N.W.2d at 114.

The Court concludes that Citizens' distribution of the funds to Zada was consistent with the terms of the parties' contract. Zada introduced Katzowitz to the loan officers at Citizens, pledged the "vast majority of the security" for the loan, and signed documents at the closing. Katzowitz Br. 1-2; Katzowitz Dep. 28:9-18. The circumstances indicate that Zada was no mere bystander, but rather, the driving force behind this loan transaction. It is not surprising that he would receive the loan proceeds, and Katzowitz testified that his understanding of the transaction was that the money would go to Zada, and would be "for [Zada]'s use." Katzowitz Dep. 21:15-19. Citizens performed in a manner consistent with that understanding, and there is no indication that any of the parties expected otherwise. Because Citizens provided a benefit to Zada in exchange for Katzowitz's promissory note, the Court concludes that consideration was not lacking.

Katzowitz relies on *Thomas v. Leja*, 187 Mich. App. 418, 468 N.W.2d 58 (Mich. Ct. App. 1991), for the proposition that a promissory note is unenforceable where the lender fails to distribute funds to the borrower. *Thomas*, however, did not involve distribution of loan proceeds to a third party. Rather, the borrower rescinded the loan transaction, and the lender never distributed the funds to *any* party. *Id.* at 420, 468 N.W.2d at 59. In such a

8

case, the lack of a bargained-for exchange is clearly fatal to the formation of a contract. Here, Citizens' payment of the loan proceeds to Zada was adequate consideration for Katzowitz's promise.

Katzowitz asserts that the loan documents' integration clauses preclude reliance on his unexpressed "understanding" of the loan transaction. Generally, "an integration clause in a written contract conclusively establishes that the parties intended the written contract to be the complete expression of their agreement." *Wonderland Shopping Ctr. Venture, L.P. v. CDC Mortg. Capital, Inc.*, 274 F.3d 1085, 1095 (6th Cir. 2001). Michigan law, however, "permits the use of extrinsic evidence to dispose of a potential ambiguity, to prove the existence of a potential ambiguity, or to indicate the actual intent of the parties where an actual ambiguity exists." *Id.* Here, even though both Katzowitz and Zada signed loan documents at the closing, the parties' contract fails to specify the account into which the loan proceeds would be deposited. To resolve this ambiguity, the Court must attempt to give effect to the parties' intent. *See Fed. Ins. Co.*, 415 F.3d at 495. Katzowitz testified that he expected that the funds would go to Zada, Katzowitz Dep. 21:15-19, and the Court does not believe it would be improper to consider this testimony.[5]

## B. Discharge

Katzowitz argues that Citizens discharged the loan, as its records indicate that the loan was "paid off." Michigan law provides for the discharge of an obligation arising

---

[5] The Court notes that the circumstances surrounding the transaction are not inconsistent with disbursement of the loan proceeds to Zada. Thus, Katzowitz's testimony regarding his understanding of the transaction is not the *only* evidence that the parties intended Zada to receive the loan proceeds; it simply reinforces this conclusion.

from a negotiable instrument:

> A person entitled to enforce an instrument, with or without consideration, may discharge the obligation of a party to pay the instrument (i) by an intentional voluntary act, such as surrender of the instrument to the party, destruction, mutilation, or cancellation of the instrument, cancellation or striking out of the party's signature, or the addition of words to the instrument indicating discharge, or (ii) by agreeing not to sue or otherwise renouncing rights against the party by a signed writing.

Michigan Compiled Laws § 440.3604(1). Citizens' records make clear that the 2004 loan was marked as "paid" based on application of the proceeds of the 2005 loan to the existing balance. The 2004 loan was "paid off" on the same day the 2005 loan was originated, and the 2005 loan disbursement instructions state: "$2,174,977.40 Payment on Loan # 20302." Katzowitz argues that the 2005 loan transaction was a fraud, due to his forged signature on the loan documents. If that transaction was fraudulent, however, it could not discharge his obligations under the 2004 promissory note. Fraud or mistake cannot discharge a party's obligation, as such a cancellation is neither intentional nor voluntary. *See Ohio Cas. Ins. Co. v. Yaklich*, 768 P.2d 1274, 1275 (Colo. Ct. App. 1989).

**C. Forgery**

   Katzowitz asserts that Citizens' role in the alleged loan document forgery renders the 2004 note unenforceable. The Court concludes that genuine issues of fact preclude such a finding at this time. First, the parties do not agree that the 2005 loan documents contain forged signatures. Katzowitz claims that he did not sign these documents and Klieman apparently concluded likewise, but the evidence is not "so one-sided that one party must prevail as a matter of law." *Liberty Lobby,* 477 U.S. at 251-52, 106 S. Ct. at 2512. Even if the signature was forged, Katzowitz has failed to present anything more than speculation

10

as to the identity of the person responsible. He believes that Olzem and Dunkelberg were responsible, but it is altogether possible that Zada or an associate of his forged Katzowitz's signature. Given the lack of evidence presented, the Court cannot conclude as a matter of law that Citizens' role in the alleged forgery renders the 2004 loan unenforceable. A party seeking summary judgment must show the absence of a genuine issue of material fact, and Katzowitz has failed to carry his burden here.

**D. Violation of Statute and Public Policy**

Katzowitz contends that the purpose of the 2004 loan was to circumvent statutory lending limits on the amount of money Citizens could loan to Zada, and therefore, the loan is void as a violation of statute and public policy. Courts will not enforce contracts that are contrary to statute or public policy. *Sands Appliance Servs. v. Wilson*, 463 Mich. 231, 239, 615 N.W.2d 241, 246 (Mich. 2000). This principle, however, is "applied with caution and only in cases plainly within the reasons on which that doctrine rests." *Terrien v. Zwit*, 467 Mich. 56, 66 n.9, 648 N.W.2d 602, 608 n.9 (Mich. 2002). Katzowitz points to several unusual characteristics of this loan, but he has failed to establish beyond dispute that its purpose was to circumvent statutory lending limits. First, Katzowitz has not set forth facts or legal authority sufficient for the Court to determine the applicable lending limit. His briefs imply that the limit was approximately $3.5 million, but provide no legal authority in support of this assertion.[6] Michigan statute imposes lending limits, calculated

---

[6] Katzowitz refers to regulations published by the United States Treasury Department's Office of the Comptroller of the Currency, Katzowitz Br. Supp. Mot. Summ. J. 10 (citing 12 C.F.R. § 32.5), but it is not clear that these regulations govern state banks such as Citizens. *See* 12 C.F.R. § 32.1(c)(1) ("This part applies to all loans and extensions of

as follows:

> Except as otherwise provided in this section or by order or declaratory ruling of the commissioner, the total loans and extensions of credit and leases by a bank to a person at no time shall exceed 15% of the capital and surplus of the bank, except that upon approval by 2/3 vote of its board of directors the limit may be increased to not to exceed 25% of the capital and surplus of the bank.

Michigan Compiled Laws § 487.14202(1). This statute limits loans to one person based on a bank's capitalization. Because there is no evidence of Citizens' capitalization before the Court, the lending limit cannot be determined. Although Klieman's affidavit indicates that Citizens' loans to Zada reached the applicable limit in 2004, Klieman Aff. ¶ 6g, there is also evidence indicating that Citizens subsequently loaned Zada an additional $1.3 million. *See* FDIC Response Br. Ex. Q. The Court is unaware of any evidence demonstrating that Zada had paid down his outstanding loan balances before obtaining these new loans; this calls into question Katzowitz's assertion that Zada had reached the lending limit. Because a genuine dispute of fact remains as to whether the Katzowitz loan was actually intended to circumvent statutory lending limits, the Court cannot conclude at this time that the loan is unenforceable.

**E. Disposition of Collateral**

Katzowitz asserts that Citizens may not obtain a deficiency judgment because it released to Zada the jewelry that served as collateral for the loan. In response, the FDIC claims that Katzowitz waived this argument by failing to raise it as an affirmative defense in his Answer. The Answer, however, incorporates the defenses raised by Fedorov in the

---

credit made by national banks and their domestic operating subsidiaries.").

related suit. These include the failure to mitigate damages and an assertion that Citizens' conduct bars its claims. The Court accordingly concludes that Katzowitz has not waived his argument based on Citizens' disposition of collateral.

The FDIC contends that the promissory note and security agreement provide Citizens with the right to release collateral, and the Court agrees. The note states:

> Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone.

FDIC Br. Supp. Mot. Summ. J. A at 2. The Commercial Security Agreement, which also specifically addresses the parties' rights with respect to the collateral, provides:

> Borrower waives any defense that may arise because of any action or inaction of Lender, including without limitation any failure of Lender to realize upon the Collateral or any delay by Lender in realizing upon the Collateral; and Borrower agrees to remain liable under the Note no matter what action Lender takes or fails to take under this Agreement.

FDIC Br. Supp. Mot. Summ. J. Ex. C at 1. These provisions plainly allowed Citizens to release the jewelry to Zada without obtaining authorization from Katzowitz.

Katzowitz asserts that Citizens failed to dispose of the collateral in a commercially reasonable manner, and this obligation cannot be waived. *See* Michigan Compiled Laws §§ 440.9602(g), 440.9610(2); *Honor State Bank v. Timber Wolf Constr. Co.*, 151 Mich. App. 681, 391 N.W.2d 442 (Mich. Ct. App. 1986). Even if Katzowitz establishes that Citizens' release of the jewelry to Zada was unreasonable, he is mistaken in concluding that such action would completely bar a deficiency judgment. Rather, he would be entitled to a reduction of the deficiency. *See* Michigan Compiled Laws § 440.9626(1)(c) (limiting

deficiency to the amount by which the obligation exceeds the proceeds that would have been realized if the secured party had disposed of the collateral properly). The Court therefore concludes that Citizens' allegedly wrongful disposition of collateral does not bar the FDIC's claims.

## IV. The FDIC's Motion for Summary Judgment

### A. Breach of Promissory Note

The FDIC argues that it has established a prima facie case of breach of a promissory note. The parties do not dispute that the promissory note is a negotiable instrument. The FDIC asserts that it is entitled to enforce this instrument pursuant to Michigan Compiled Laws § 440.3301. Under this statute, the following persons may enforce an instrument: "(i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to section 3309 or 3418(4)." It cannot be disputed that the FDIC is not a holder of the note. "To be a holder, a person must be in possession of an instrument which is issued or endorsed to him or his order." *Fifth Third Bank, N.A. v. Dziersk*, 12 F.3d 600, 604 (6th Cir. 1993) (citing UCC § 1-201(20)). The FDIC has admitted that it does not possess the original note. FDIC Resp. to Req. Admis. ¶¶ 11. For the same reason, the FDIC is not a nonholder in possession of the instrument. Thus, the FDIC can only enforce the instrument if it is entitled to do so under sections 3309 or 3418 of the statute. Section 3309 provides for enforcement of an instrument where the instrument was stolen, destroyed, or cannot be obtained through service of process, but the FDIC has not established any of these circumstances. Rather, Klieman indicated that

Citizens marked the note as "paid" and sent it to Zada.  Klieman Aff. ¶ 7.  Section 3418 allows a person to enforce an instrument where the instrument "is paid or accepted by mistake and the payor or acceptor recovers payment or revokes acceptance."  The FDIC has not established that Citizens' transfer of the note to Zada was the result of mistake, or that Citizens recovered payment or revoked acceptance of an instrument.  The Court therefore cannot conclude as a matter of law that the FDIC is entitled to enforce the promissory note under Michigan Compiled Laws § 440.3301.

**B. Breach of Contract**

The FDIC asserts that Katzowitz breached the loan contract by failing to make the required payments.  Under Michigan law, "the essential elements of a valid contract are (1) parties competent to contract, (2) a proper subject matter, (3) a legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *Thomas*, 187 Mich. App. at 422, 468 N.W.2d at 60.

Katzowitz claims that the purpose of the loan was to circumvent statutory lending limits, and he has presented evidence supporting this claim.  Klieman's investigation led him to conclude that Olzem and Dunkelberg had used loans to third parties to indirectly advance funds to Zada, effectively circumventing lending limits.  Klieman Dep. 262:25-263:4.  As the FDIC correctly notes, however, the actions of Olzem and Dunkelberg are not necessarily be attributable to Citizens.  The Michigan Supreme Court has recently summarized the principles of *respondeat superior* liability:

> An employer is generally liable for the torts its employees commit within the scope of their employment.  It follows that an employer is not liable for the torts . . . committed by an employee when those torts are beyond the scope of

> the employer's business. This Court has defined "within the scope of employment" to mean "engaged in the service of his master, or while about his master's business." Independent action, intended solely to further the employee's individual interests, cannot be fairly characterized as falling within the scope of employment. Although an act may be contrary to an employer's instructions, liability will nonetheless attach if the employee accomplished the act in furtherance, or the interest, of the employer's business.

*Hamed v. Wayne County*, 490 Mich. 1, 10-11, 803 N.W.2d 237, 244 (Mich. 2011) (footnotes and citations omitted). The evidence indicates that Citizens' board of directors was unaware of the true nature of the Katzowitz loan.[7] Klieman testified that at the time the Katzowitz, Fedorov, and Zaremba loans were made, "[t]he board of directors was not aware that these were third-party loans to Joseph Zada." Klieman Dep. 51:3-5. It is unclear, however, whether Olzem and Dunkelberg's actions were taken "in furtherance" of Citizens' business. One might generally presume that a loan officer promotes the bank's interests by making loans. Yet the irregularities in the loans involving Zada, when considered in light of the history of dealings between Zada, Olzem, and Dunkelberg, suggest more than a mere business relationship. Zada also allegedly paid for Olzem and Dunkelberg to vacation at his Florida home, Katzowitz Br. Supp. Mot. Summ. J. Ex. L at 4, indicating that Olzem and Dunkelberg may have derived considerable personal benefit from their actions. The Court believes that a genuine dispute of fact remains with respect to whose interests Olzem and Dunkelberg were actually attempting to serve by making the loan to Katzowitz. This dispute must be resolved for the Court to determine whether the loan contract was in fact illegal, and therefore, unenforceable.

---

[7] Both Olzem and Dunkelberg served on the board, but they apparently did not inform the other board members of the details of these transactions.

**C. Applicability of 18 U.S.C. § 1823(e)**

The FDIC contends that 12 U.S.C. § 1823(e) bars Katzowitz from asserting defenses based on the alleged scheme between Zada, Olzem, and Dunkelberg. The Court disagrees. The statute, which partially codified the holding of *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S. Ct. 676 (1942), provides:

> No agreement which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it . . . shall be valid against the [FDIC] unless such agreement -
> (A) is in writing,
> (B) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
> (C) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
> (D) has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C. § 1823(e).

The FDIC reads the statute too broadly, as by its terms, it applies only to *agreements* which tend to diminish or defeat the FDIC's interest in an asset. "It is well established that 'section 1823(e) does not apply to every inquiry concerning an asset.'" *Commerce Fed. Sav. Bank v. FDIC*, 872 F.2d 1240, 1244 (6th Cir. 1989) (quoting *FDIC v. Merchants Nat'l Bank of Mobile*, 725 F.2d 634, 639 (11th Cir. 1984)). "'Section 1823(e) does not . . . protect [the] FDIC against all defenses.'" *Id.* (quoting *FDIC v. Blue Rock Shopping Ctr., Inc.*, 766 F.2d 744, 753 (3rd Cir. 1985)) (alteration in original). The statute "applies only to an action or defense which is anchored in an agreement separate and collateral from the instrument which the FDIC is seeking to protect." *Id.* "In contrast, however, the statute

'does not apply when . . . the parties contend that no asset exists . . . and that such invalidity is caused by acts independent of any understanding or side agreement.'" *Id.* at 1245 (quoting *Merchants*, 725 F.2d at 639) (omissions in original). Nor does it apply "when the court determines if an asset is invalid for fraud or for breach of bilateral obligations contained in the asset." *Merchants*, 725 F.2d at 639 (citations omitted). Katzowitz does not assert a defense based on a side agreement; rather, he contends that the loan itself is void because it was illegal. Such a defense plainly falls outside the scope of § 1823(e). The Court concludes that § 1823(e) does not bar Katzowitz's defenses.

**D. Effect of the Forged Documents**

The FDIC argues that if the 2005 loan documents were forged, as Katzowitz asserts, this loan could not operate to discharge the 2004 loan. This is correct, and the Court has addressed this argument above in the context of Katzowitz's motion. The Court therefore declines to elaborate further here, except to note that this argument cannot justify granting summary judgment in the FDIC's favor. Although the 2004 loan could not have been discharged by fraud, this does not mean that the 2004 loan is necessarily enforceable. If the 2004 loan is subsequently found to be unenforceable due to illegality, the FDIC's claim fails irrespective of any forgery in the 2005 loan documents.

**E. Foreclosure**

The FDIC seeks a judgment of foreclosure on the mortgage granted by Katzowitz. As the Court has noted above, genuine disputes of fact remain as to the enforceability of the underlying loan obligation. A judgment of foreclosure would therefore be improper at this time.

## V. Conclusion

Based on the evidence and arguments presented by the parties, the Court concludes that genuine disputes of fact preclude summary judgment in this case.

Accordingly,

**IT IS ORDERED** that Katzowitz's motion for summary judgment is **DENIED**;

**IT IS FURTHER ORDERED** that the FDIC's motion for summary judgment is **DENIED**.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
Shawn Y. Grinnen, Esq.
Thomas G. Costello, Esq.
Mark E. Merlanti, Esq.           Daniel G. LeVan, Esq.